May it please the Court. My name is Ron Hobit. I represent Dorothy Flowers, who is the appellee. Your Honors, Judge King did not have the benefit of the panel opinion in Cantrell when he sentenced Mrs. Flowers. He took the guidelines into account, arrived at an adjusted offense level, and then he did not engage in the departure analysis. In fact, the record reveals that he said, I don't depart. I consider factors. And the government agreed with this approach. So I believe that the first error cited by the government in this case was not preserved by the government below, which is that Judge King didn't follow the proper procedure as set forth by their reading of the Cantrell opinion because he did not engage in a departure analysis. The difficulty for departure or no departure is that he calculated, under Cantrell, that he calculated the guideline wrong. That's it, right? I don't think that's it. Well, that's it under Cantrell. I don't think so, Your Honor, if it's it unless the error is harmless. Sure. And I believe that the record And harmless means what the Supreme Court has called harmless, I think. If it didn't affect his decision, then it's harmless. Yes, I agree with that, Your Honor. And I believe the record in this case shows that it did not affect his decision. Judge King, in imposing the sentence, said that if in fact, for example, the tax loss in this case was the law of the case, which set the total offense level at 26 before he engaged in a departure analysis. In Mrs. Flower's case, he departed at 13 levels. He indicated that whether he considered it as factors in arriving at a reasonable sentence, or whether he considered them as grounds for departure, he would arrive at essentially the same place. Now, I agree that the two offense levels are slightly different under that analysis. But I believe the error is harmless because he would impose the same sentence. Arriving at the two offense levels in this case, he then considered two other factors that were new to him, which he was entitled to do, certainly under Ameline, take a fresh look at the evidence, Your Honor. He would have imposed the same sentence. Why was he entitled to do that under Ameline? Well, I think Ameline says that when a case is remanded to the Ninth Circuit, Your Honor, for resentencing, that the judge is entitled to take a fresh look. He did that as far as the tax loss was concerned in this case. A fresh look at the evidence to decide what he wants to do. Right. Well, that's right. But a fresh look in terms of saying, although the Court said that my approach was reasonable, and indeed said more than that, said it's a good way to find tax loss, still I'm going to do it a different way. Is that what you mean by fresh look? What I think happened, Your Honor, is between the two sentencings, Ameline, he seized on some language in the Ameline 3 case that said the tax loss has to be based on reliable evidence. Right. And he said that when he first sentenced Ms. Flowers, he considered the pre-sentence report as presumptively correct. Now that he was taking a fresh look, he invited the government to introduce evidence of the tax loss. And the government didn't do that. It declined to introduce any evidence. In fact, it essentially required Judge King to review the transcript in its entirety and to review the exhibits in its entirety to come up with some kind of tax loss. The government didn't guide the judge at all when the Court clearly indicated that he was now uncomfortable with the decision he had made the first time taking the pre-sentence report as presumptively correct. And the speculation the first time that the deposit to the bank account meant that it was income to the bank account. So he did take the fresh look, invited the government to present evidence of the tax loss, and they failed, and the government failed to do that. Well, but Ameline said, not Ameline, Anderson said. Yes. That not only was it didn't clearly error, but said the method District Judge employed before was reasonably designed to calculate the tax loss. Now, Ameline didn't change anything about reliability. That had been our law for a long time, back to Romero-Redon and beyond that. So Ameline didn't change anything there, and we held that it was reasonably designed to calculate the tax loss. Anderson clearly held that, Your Honor. So let me go then to the point being then that it is the law of the case, and Judge King dealt with that. He said that if the tax loss in Anderson is the law of the case, then I would consider the same departure factors, and I would depart 13 levels. And then he did an analysis as to why the sentence of probation with home detention and community confinement was a reasonable sentence, citing two additional factors. Your Honor, I believe the record reflects that if he made an error, that the error is harmless, and that he would, that Judge King made it clear that he would impose the same sentence on Mrs. Flowers whether the tax loss was $5 to $10 million or whether the government failed to prove any tax loss at all. I see my time is more than up. Thank you. Good morning. My name is Chriswein Miller, and I represent Richard George Flowers. I'm going to jump right to the point that Your Honor was just addressing about tax loss, because I do think that that is key to this appeal. One argument that I would add in addition to the points that Mr. Hobart made, which I adopt in full, is that Ameline III essentially addressed the inappropriateness of burden shifting, and it's our position that, in effect, by allowing the government to proceed in the manner it did during the first sentencing, that the burden was placed upon the defense to disprove the reliability of that evidence, of the tax loss evidence. Ameline III makes it clear that the burden, and, of course, the Supreme Court cases, Booker and Blakely, make it clear that that burden cannot be placed upon the defense. The government has to affirmatively prove tax loss. All the government did in this case at the resentencing was to point, after the fact, the district court judge to the trial record. It was a six-week trial. He did nothing to elucidate what in that record would have supported any of the tax loss figures. Well, there again, what Ameline said about that was nothing new. It goes all the way back to Howard, where he said the government had the obligation of proving, he said then by preponderance of the evidence, anything that would increase the loss over the point, over the base level. That goes all the way back to Howard. There's nothing new in Ameline about that, and yet Anderson's already said that what was done there was okay. Well, Ameline reiterated it, but I believe that it really placed an emphasis on it that had not been placed on it when Howard allowed the reliable estimate to be used. It has been our position throughout, and it was our position in the first appeal and at the first sentencing, that that was not reliable evidence. Well, it's pretty clear that a reliable estimate can be used, isn't it? I mean, there's nothing that says that's not correct, especially in the tax loss area. I thought we had a case that said that. It is clear that a reliable estimate can be used, but I think our understanding of what is reliable may be changing in light of Ameline and in light of Booker and Blakely, that the summary fashion in which the government proceeded the first time, summarizing evidence that was found in a government investigation that was not presented at trial, which was then challenged by the defense, isn't sufficient. It's no longer compliant with that term reliable estimate. So that what the government has to do is more specifically prove, not to the penny what that tax loss would have been, but to show that particular, in the case of CPA, let's be more specific, in the case of CPA, that particular account holders in fact did have a tax obligation that was unpaid, or that assets that were held within the CPA account were in fact being held there as a way of evading their seizure. Did the government attempt to do that at all during the course of the trial? They did not. And in fact, the summary broke down into four categories, and those categories really relied much more heavily on government investigation that was not the subject of trial testimony, but independent investigation, than the trial testimony. And the government still has not made any attempt to go through the trial record and set out what actual tax loss was proven at trial. Now, it's true that the co-defendants, not Mr. Weakley and neither of the Flowers, but the remaining co-defendants, Mr. Anderson, Dr. Kirkham, and the Stacys, all were charged with tax evasion. So the Flowers are charged... But there's a problem. You've got something going, a scheme going on, what, 14 years? The purpose of it, at least it seems from the evidence, the purpose of this scheme is to accomplish exactly what was accomplished, probably. People are going to float money through this thing to hide it from the government so that they can avoid paying income tax. Lord knows how much income tax was avoided by doing this, but somebody's got to make some kind of estimate of what it may or may not have been. We know people probably weren't going through this exercise just for fun because they loved transferring their money to other people in other names who deposited in still other names and give phoning numbers and all kinds of phone numbers and move it around and then give it back to them. They don't do that just because it's fun to move money around. It's not a game. It's done for a purpose. The purpose is what their purpose was, obviously, to help people avoid income tax. Somebody's got to make an estimate of how much income tax was avoided. They took like a two-year period and figured some percentage on that. Why is that not a reliable way to approach it, or is it as reliable as you can get under human purposes? Or do these people always get to skate because you're never going to find out where all that money went and where it came from, et cetera? I agree with Your Honor that it would be unreasonable to expect the government to prove to the penny what the specific tax laws was for every single customer. However, what we're suggesting should be required, what we believe the case law does require, is that the government must at least prove that specific account holders were derelict in their obligation to pay taxes. There are 900 members of CPA, and it was not proven, and I do not believe that it was true that all 900 members participated in CPAs specifically for the purpose of evading taxes. There are a number of people who have very serious privacy concerns and essentially want to live outside the system for philosophical reasons as opposed to economic reasons. I'm not denying that there were people who had economic motivations. They want to live outside the system and not pay taxes to them. For some of them. But the question really is how do we assess which of those 900 that applies to? And the argument that we're making is that the government can't just assume, make the assumption that that is true across the board, that there has to be some sort of affirmative showing with respect to specific customers, and then the reliable estimate can be determined of what the tax loss was associated with that percentage of the 900 or that specific subset of the 900. Your Honor, the other point that I think is particularly important to us in this appeal is that the court, Ditch King, I believe, did a remarkably good job of foreseeing how the case law would develop over the ensuing year, the year that's passed since he imposed the sentence. I believe that he was correct in applying the clear and convincing standard. We're not waiving our argument with respect to the beyond a reasonable doubt standard. It is possible that the Supreme Court is going to determine that, in fact, beyond a reasonable doubt is the appropriate standard. It clearly has left the door open to do that, but we respect the fact that the standard in this court now, in this circuit, is clear and convincing, and that the judge did appropriately determine that the impact of the increase in the tax offense level or the base offense level based on the tax loss computation was so significant that preponderance was not appropriate. The argument that we have not yet addressed that we think is an important one is that the court's decision to increase Mr. Flower's sentence from the top of the range that he found, the range that he found, level 10, was 21 to 27 months. He imposed a sentence instead of 50 months. He almost doubled the sentence, and he did that without making departure findings. We believe that that was an unreasonable increase and that the record does not support the basis for that upward increase. He made sufficient findings with respect to all of his enhancements. I've already addressed our position with respect to the tax loss computation. But in deciding to double the sentence, he did not adequately explain his decision. He certainly didn't do it in terms of departure findings. And there is nothing in the record that would establish that that sort of increase, that almost doubling of the sentence, was reasonable. So we would ask the court to reverse the trial court's finding on that basis alone, simply to find that that increase from 27 to 50 months was unreasonable. Thank you. Please, the Court. Laura Graser for Mr. Wheatley. My client's sentence flows from Mr. Flower's sentence, and therefore I flow along with Ms. Weinwiller's argument as well. The one thing that is distinctive, I think, about my client is that the jury affirmatively found that he properly lived outside the system and had no tax liability. My client lived in extraordinary voluntary poverty with his two children, and I think he's a living demonstration of the fact that the Christian Patriots Association was not simply a taxable scheme. It was a privacy scheme, and what some people did with it is not what everybody did with it. And therefore, my client had no tax liability, and that suggests there were more than just my client that had no legal tax liability. Okay. May it please the Court. My name is Karen Quinnell, appearing on behalf of the United States. Your Honors, Judge King made two serious errors in sentencing the defendants in this case. He required the government to prove tax loss by clear and convincing evidence. It is clear in this circuit that proof of the base offense level is by preponderance of the evidence, and I would cite you to this Court's decision specifically, particularly in Montano and Riley. Furthermore, the Court found the district court in the first sentencing found by clear and convincing evidence that the government had established that the tax loss was at the very least $5 million. Why do you suppose he backed off of that the second time? I do not know why he backed off of that the second time, and I would prefer not to speculate on the judge's motives. What I can tell you is that the first time around, the government provided the Court with very specific information on what defendants and what clients of CPA had not paid their tax liabilities. For example, attached to all of the PSRs for the three defendants here, the government had done a calculation and created a chart for the probation officer. That chart was included in the PSR. That chart broke down by years deposits of certain members and their tax filing history. The Court may remember that there were approximately 900 clients of CPA and that over the life of the warehouse bank, they deposited $186 million into the warehouse bank. The government used primarily two years plus some other information for some other years in doing its calculation that it provided to probation. Those two years were used because the government was able to seize from CPA virtually complete records for 1995 and 1996. The government then compared the CPA records to its own records and determined that certain members had deposited extremely large amounts of money. For example, there were 357 members of CPA who did not file tax returns for 1995 and 1996. They deposited $33 million into CPA. They did not file any tax returns. The government reasonably determined that those that $33 million constituted taxable income and that the tax loss from just those particular people was $6 million, in excess of $6 million. How did you arrive at that number? Excuse me? How did you arrive at that number? Just assume that they would pay at a certain rate? Yes. Under the guidelines, you may recall that there are presumptive rates for failure to file. The presumptive rate is 20 percent. There were other defendants, other users of CPA who had filed tax returns but who had not reported the deposits that they made into CPA. Under the guidelines for those clients, the calculation is 28 percent, and that's what the government did. So using approximately $46 million. Other than these charts, the essence of the charts that were provided to the probation officer, was there any source documentation about? Was there any, excuse me? Source. You know, the raw data. Certainly. The records from CPA. Yes. Were they presented to the district court? There was evidence at trial in front of the district court. For example, several clients of CPA testified. The Mitchells who ran, I'm sorry, I can't remember what kind of a company, but they ran a company, they ran all of their receipts or virtually all of their receipts through CPA. They testified at trial that they didn't report those receipts on their income tax returns. The government determined that the tax loss from their failure to report that income was $1,136,000. Additionally, the government convicted four, one, two, three, three account holders of evasion. There was evidence that Mr. Anderson, I believe, ran a print shop. We established that his tax liability that he had not paid was $274,000. Dr. Kirkham was, I believe, a chiropractor, although I may be wrong. His tax liability, $146,000. CPA itself had a tax liability from its sales and its other activities of $71,000. So if you add all of that together, we have already there almost $2 million. In fact, Richard Flowers, in his brief in the first appeal, conceded that over a two-year period, the government had established that CPA caused a tax loss of $2 million. So not only is the government. So let me ask you, so at the second resentencing. Yes, Your Honor. When Judge King was concerned about the reliability of the evidence on tax loss, did the government offer to produce or just point to the record where the information was to substantiate these estimates? Let me tell you what happened at sentencing. The government referred to the chart that I've been telling you about, which broke this down, and broke it down by particular persons. If you look at the supplemental appendix we did, roundabout page 167, there's lists for each person and how much. Well, the government referred to the evidence at trial. The government referred to its chart. Well, it's one thing to refer to evidence at trial. Yes. At trial, this was introduced, but did you? We did not specifically, but this is what happened. Just point to the record in the record or transcripts of the trial or? No, we did not give specific references. We did not give specific citations to the trial transcript or any of that. We did make general reference, and we specifically pointed the court to the information in the original PSRs. The government had no idea that the court was concerned about the reliability of that evidence. When the government finished making its argument at this sentencing hearing, recognizing that the court had already had a sentencing hearing, that this court had already said $5 million was reasonable and that Judge King presided over the original sentencing, the government basically made an argument that here's why we think you ought to impose this particular sentence. The judge said at the end of the government's presentation, do you have any other information, fact, or evidence to offer at this time? And the government said, no, Your Honor, other than cost of prosecution, we think that's all. The court did not say to the government, because if you don't say anything else, I'm going to find the tax loss is zero, he didn't say I'm concerned that my original finding by clearing convincing evidence that the tax loss was $5 million, that I'm worried about that, that I'm not going to use that number this time because I'm concerned that that evidence might not be reliable. What he did was he allowed the government to proceed to make its argument about the next defendant, and again asked this question, do you have any further evidence? The government said, no, the court again did not say, because if you don't say anything else, I'm going to use zero tax loss. He allowed the defendant to proceed, and then he said, the government didn't put on any evidence today, so I'm finding zero tax loss. And the government said, but, Your Honor, we gave you the chart. We talked about the information that we referred to at the previous sentencing. We referred generally to the evidence at trial, and the court said to the government, I'm not looking for argument now. You had your chance, and you didn't put on any evidence. Did you ask me to take judicial notice of the evidence that was presented at trial? The government said, no, Your Honor, we didn't ask you to take judicial notice. We didn't think we needed to put additional evidence on at trial. You sat through the trial. You, the judge, Judge King himself recognized during the sentencing hearing that CPA was an organization that operated for many years and, excuse me, allowed many people to evade their taxes. The judge had sat through the trial and heard about the shredding of documents, the using of numbered accounts, the commingling of funds. So the government did not – it's correct that the government did not do another chart. The government did not lay out for the court every single piece of evidence that would have supported that. The government did attempt later on when the court said, well, I'm going to use zero because I think that's unreliable, the court attempted – the government attempted to argue to the court, but, Your Honor, you're not even including the tax liability of the defendants that were convicted at trial of tax evasion, and he didn't want to hear it. So the government did not have an opportunity to put on a new evidentiary hearing, which, frankly, I do not know why we would have needed one. In the first instance, the court required us to find – to prove the tax loss by clear and convincing evidence, which, frankly, was an erroneously high standard of proof. But, you know, we don't have a problem with that because we think that we did prove the tax loss by clear and convincing evidence. In fact, we think we proved that $10 million was the correct tax loss, but the court said, well, I think that's somewhat speculative, even though it was based only on $46 million out of the $186 million of deposits. And so the court said, well, I'm going to use $5 million to give the defendant the benefit of the doubt. Ms. Quinnell, if you're correct on the line of argument you've been pursuing, then the proper remedy under Cantrell is to vacate the sentence and remand because there's an error in the guideline calculation, right? Is that – you agree with that? It is correct, Your Honor. And we don't have to go any further, do we? We do not have to go any further. Unless it was harmless. That's correct, Your Honor, when naturally the government does not believe that this error was harmless. This was a fundamental error that affected the entire sentencing hearing. And if the court were to – Well, the guidelines on a tax offense are built upon the amount of tax loss, right? That's correct. And so it is vital – So it almost can't be harmless. That's correct. It is vital to determining an appropriate advisory guideline range to determine the amount of the tax loss. And there is absolutely no way that CPA resulted in zero tax loss for the government. Now, to address the question of harmlessness, the district court himself recognized during the sentencing hearing that this was extremely serious conduct. This conduct lasted for more than a decade, almost 15 years. The defendants were deeply involved in the scheme. Dorothy Flowers ran the office on a day-to-day basis. Richard was out promoting the use of CPA to people at expos. Weakley helped out by allowing his alias to be used to hide the funds in the bank account. And he also handled several other things, going to the office to buy postal money orders, encouraging clients of CPA to get out of the system slowly. Don't go cold turkey. Slowly stop filing your tax returns. Report less and less money, then no income. But instead of imposing a severe, a substantial sentence on these defendants, the district court gave Dorothy Flowers, second in command at CPA, a sentence of probation. There is absolutely no way, even after Booker, and looking at all of the factors in 3553A, that a sentence of probation is appropriate in this case to reflect the seriousness of the offense, to deter criminal conduct, to provide just punishment, to protect the public from further crimes of the defendant. In your view, if we send this back and the district court says, I better stick with what I said before, and adopts those other numbers, do you predict there's going to be a difference in sentencing result? Or do you think the district judge could not reasonably determine a different sentencing result under the new regime? Well, in our brief, we asked this court to address the factors that the district court discussed with relation to Dorothy Flowers. When it said that, even if I could use the higher number, I would still depart. Now, we don't know for sure whether he would depart to the exact same level and give her probation, because in the original sentencing, he departed the 13 levels and gave her 12 months and a day. But in any event, there are several factors that the court discussed when he granted the departures in the first situation. And none of those, we believe, either under the guidelines, if you are using them to calculate an advisory guideline range, or if you were to consider them under 3553A, justify a sentence of 12 months. Some of the factors that the court relied on were that Dorothy was less culpable than Richard. Well, the government agrees that Dorothy was less culpable than Richard, and the district court took that relative culpability into consideration when it calculated the guidelines the first time, the advisory guideline range, because he gave Richard Flowers an enhancement for his role in the offense, four levels for being a leader, organizer, and he refused to give Dorothy any additional increase or decrease for her role in the offense. And that decision was clearly proper. Dorothy was not a minimal or minor participant in this offense. She was substantially involved, and so she couldn't qualify for a downward adjustment. And we don't believe that if she can't qualify, we believe that if she can't qualify for a downward adjustment of two levels, she certainly cannot qualify for a downward departure of 13 levels. Well, that's what you taught guidelines. Under the guidelines. That's what you taught guidelines taught, but that's the very point of the new regime. Maybe under the old regime he was stuck with not giving her two levels or whatever. But it's a whole new world. That's right. Well, I've looked at all the other considerations. He can consider that and numerous other factors that obviously he couldn't consider before the Booker decision came out. Correct. Even if you look at 3553A factors, well, first of all, one of the 3553A factors is the advisory sentencing guideline range, and the district court didn't calculate a proper one, so we don't know how to look to see whether what he ended up with is reasonable or not because we don't know where to start from. So I think that the district court's serious errors require this court to remand the case for resentencing. And we would ask the court to give guidance on the departure factors so that the court will know some of the guidelines for him to use when he does the resentencing. Does the court have any further questions? Anything else? Thank you, Your Honor. Okay. I believe the defense still had some rebuttal time. Your Honor, Dorothy Flowers is in a different position than Richard Flowers or Jeff Wheatley. First of all, I believe this court's already passed on the departure factors. That the government has been objecting to in U.S. v. Anderson because you remanded the case for resentencing for a limited purpose, which was to change Dorothy Flowers' sentence if the sentence of Richard Flowers changed. The court, I believe, considered in Anderson 1 the grounds that Judge King cited for departure and had no problem with them. I think the error in this case was harmless because the judge was careful in saying that if the tax loss is $5 million to $10 million, if that's the law of the case, then as I point out on page 14 of my brief, the district court also said that it would not change its mind with respect to the downward departures I've made with respect to your client. Now, so that means that he would have departed 13 levels because he said so, and he would be faced with the sentencing guideline range of 12 to 18 months instead of the range he determined at resentencing of 10 to 16 months. But it's clear, I think, from the record that the two new reasons he cited for imposing this time instead of a year and a day, a probationary sentence on condition that she served six months in community confinement and six months in home detention, was a reasonable thing to do. The error in this case, if any, was harmless as with respect to Dorothy Flowers, and I don't think there's any question from the transcript that Judge King would impose the same sentence if you send it back to him in the case of Dorothy Flowers. Thank you. Thank you. Yes. Yes, ma'am. I have a few points that came up in the government's argument. First of all, when the government contends that the prosecutors had no idea that the tax laws issue would be addressed again at the resentencing, that simply isn't accurate. I clearly addressed that in my submissions, my sentencing submissions, and those are included in our excerpts of the record, both at 75 and at 123. That issue was in play. The government recognized that it was in play and thought that what it had done earlier was sufficient and chose not to present additional evidence. But I believe the government was on notice that that was an open question. No, but even if it's open, I mean, don't you think in a sense the government's entitled to rely upon the fact that, one, loss was found by clearing and convincing evidence one time, and, two, it was approved by the appellate court, saying it's not erroneous. But this court supported that. That's almost like law of the case. Isn't the government entitled to rely on that to some extent instead of having to know that it has to start all over from scratch? What had changed, though, this court considered the appeal, the first appeal, prior to Ameline, prior to Booker, prior to Blakely, prior to any of that change in the sentencing law? And by that reasoning, Booker would not be being given any right to defect. But you still have to make the same calculations now as we did before as to whether or not it was erroneous. In fact, I would say the burden of proof is less. It's not by clearing. I don't think it's by clearing and convincing evidence. Well, the law in this circuit going back predating Booker, predating any of these cases, has been that when the effect of the increase is as substantial as it was in this case. Not when it goes to the computation of the base offense level. No, that also does apply to the computation of the base offense level, not just to enhancements. Well, even so, he used clear and convincing, right, the first time. So why couldn't the government rely on that? He did, but clear and convincing becomes a little bit confusing in the context of a reasonable estimate of tax loss. There is, at least potentially, some conflict between those two terms. And I think the court was attempting to reconcile. Well, that may be so, but still, he made that finding, and the appellate court said it was not erroneous. So why isn't that something the government can take as well? It's already been decided. Why do we have to decide it again? The appellate court made that finding prior to the need for reconsideration under the new case law, the significant change. And what does the new case law say? The new case law doesn't change how that determination is made. It just says it becomes advisory. I think the most significant change is that it reaffirmed the inappropriateness of the burden shifting, and I believe that the way that calculation was done under the reasonable estimate, the interpretation of what the term reasonable estimate of tax loss means the first time, it inappropriately placed the burden on the defense. That wasn't raised the first time around, the burden shifting? No, but I believe that that's the significance of the change in the cases in Booker and Blakely and Annalene and all of the cases. I don't think that's changed at all in terms of who has a burden. Well, it was long said along the circuit that the government always had the burden on the base. Or when it was advocating an enhancement. That is true, and I addressed this earlier. It's our position that how reasonable estimate of tax loss is interpreted has to change in light of these more recent cases, that rather than being a loose sort of summary presentation of evidence that was made here. And this was the point that I was starting to make initially. You asked a question earlier, Your Honor, about what source evidence was presented. The source evidence was not presented to the trial court. The summary was presented. It was appended to the PSR. Well, they could have. They could have conducted a sentencing hearing whereby the government would have produced the source evidence. Correct. And I gather they would have if they understood that the district court was so concerned about the state of the evidentiary record. We don't know. What I recall occurring at that point in the sentencing was that the prosecutors cited the court back to the evidence that was actually adduced at trial without specifically making reference to what that evidence was, which of the defendants, co-defendants, or trial witnesses it was relying upon for those findings. Now, with respect to the co-defendants, I believe that had the government done that in a more appropriate fashion and had actually set out for the trial court judge specifically what it was asking the court to rely upon, it may have been that some of that would have been from this opponent. It may have been that some of it was not. But that has not been specified to this court. We're running out of your long way over your time. I want to see if your co-counsel just has anything she wants to offer. Okay. Thank you. The matter will be submitted. I skipped over Laird v. Hill, which is on the front page of the calendar, and that matter is submitted on the briefs. It will be in recess until tomorrow morning. Thank you very much, counsel, for your arguments. We appreciate it.
judges: Fernandez, Tashima, Paez